
FILED
DEC 15 2015
Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

ESSEX VENTURES, LLP, DAVID A. TRIPP, THE WEEKS AT ALASKA COMMUNITY PROPERTY TRUST, KTM, LLC, FLOYD C. BOSSARD, MARGARET J. BOSSARD, J&MC, L.L.P., WILLIAM BOUCHEE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GRACE M. BROOKS, and THE RICHARD C. BOSSARD AND MARGARET B. BOSSARD REVOCABLE TRUST,

   Plaintiffs,

vs.

ROBERT C. SAMUEL,

   Defendant.

CV 14-252-M-DLC

ORDER

Before the Court are the parties' cross-motions for summary judgment. For the reasons explained below, the Court grants Plaintiffs' motion and denies Defendant's motion.

**BACKGROUND**

This case arises from a single property owner offering two separate but abutting portions of her real property as security for two separate loans. The material facts surrounding these transactions are not in dispute. Plaintiffs are the

-1-

current owners of the so-called "Riverside Lot," a triangular piece of real property situated along the Clark Fork River west of Missoula, Montana. The Riverside Lot is landlocked to the extent it lacks legal access to a public road – apart from its boundary with the Clark Fork River, the Riverside Lot borders private property, including Defendant Robert C. Samuel's ("Samuel") so-called "Exhibit C Properties," in all directions.

The Riverside Lot and Exhibit C Properties were once under single ownership. Bonnie G. Snavely ("Snavely"), whose family historically owned much of the land in this immediate part of Missoula County, mortgaged the Exhibit C Properties, among others, to secure a loan from American West Bank in 2003. In 2005, American West assigned its mortgage interest to Samuel. Both the Snavely mortgage and the assignment were properly recorded. In 2006, Snavely mortgaged the Riverside Lot to secure a loan from Plaintiffs. This mortgage was also properly recorded.

Snavely ultimately defaulted on both loans – first Samuel's, then Plaintiffs'. Samuel obtained a judgment and decree of foreclosure on the Exhibit C Properties on December 14, 2006 and, following a sheriff's sale on November 18, 2008 and expiration of the one year redemption period, procured a sheriff's deed to the Exhibit C Properties on November 20, 2009. Likewise, Plaintiffs obtained a judgment and decree of foreclosure on the Riverside Lot on September 28, 2010

and, following a sheriff's sale on November 18, 2010 and expiration of the redemption period, procured a sheriff's deed to the Riverside Lot on January 3, 2014. To date, the Riverside Lot remains landlocked without legal access to a public road.

Plaintiffs filed this declaratory judgment action in the Montana Fourth Judicial District Court in September 2014. They seek to establish legal access by implication, and urge the Court to declare both their entitlement to, and the form of, such access. Plaintiffs further seek attorney's fees and costs. Samuel removed the case, citing this Court's diversity jurisdiction, in October 2014. The Court held a scheduling conference in February 2015. Plaintiffs filed the instant motion for summary judgment in July 2015, and Samuel filed his cross-motion for summary judgment in August 2015. This matter is set to be tried to a jury on January 11, 2016.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary

judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing part." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

## ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Thus, the Court decides these motions for summary judgment pursuant to well-developed Montana law on easements.

### I. Plaintiffs' motion for summary judgment.

Plaintiffs move for summary judgment as to the their entitlement to an implied easement by necessity across Samuel's land, and claim that the facts as described above satisfy the two elements of such an easement. Samuel counters that: (1) the law disfavors implied easements; (2) Plaintiffs ignore the third element of establishing an implied easement by necessity – lack of contrary intent; and (3) Plaintiffs have offered no evidence going to the scope of the easement sought. Because the undisputed facts establish Plaintiffs' right to the easement,

-4-

and because none of Samuel's arguments are supported by Montana law, the Court will grant Plaintiffs' motion for summary judgment, reserving for trial the scope of the easement.

"Montana law recognizes the existence of easements by necessity as a species of implied easements." *Frame v. Huber*, 231 P.3d 589, 591 (Mont. 2010). "Easements by necessity arise from a legal fiction that the owner of a tract of land would not sell parts of the land so as to isolate and landlock a remaining portion of it without having intended to reserve a way of access to the parcel over the lands being severed." *Id.* (citing *Wolf v. Owens*, 172 P.3d 124, 128 (Mont. 2007)). "The law implies intent by the landowner to provide an easement by necessity in favor of the landlocked parcel across the landowner's other lands when necessary to reach a public road." *Id.* "In easement terms, the landlocked parcel is the dominant estate, and the landowner's other sold property that must be crossed to reach the landlocked parcel is the servient estate." *Id.* (citations omitted).

"An easement by necessity can arise only within the context of land held in common ownership at the time a severance creates a landlocked parcel, and cannot exist over the land of a third person whose land was not part of the common ownership." *Id.* (citing *Big Sky Hidden Village Owners Assoc. v. Hidden Village, Inc.*, 915 P.2d 845, 850 (Mont. 1996)). "Implied easements by necessity have never been intended to provide access across the land of others to benefit any and

all landlocked property." *Id.* at 592.

The party seeking an implied easement by necessity must prove "two essential elements" by clear and convincing evidence: (1) unity of ownership, and (2) strict necessity. *Frame*, 231 P.3d at 592. "If the easement is established, the servient property owner then suffers permanent loss of some of his property rights without any compensation." *Id.* "Therefore . . . easements by necessity are 'considered with extreme caution' because they deprive the servient tenement owner of property rights 'through mere implication.'" *Id.* (citing *Graham v. Mack*, 699 P.2d 590, 596 (1985)).

The unity of ownership element is met "where the owner of a tract of land severs part of the tract so as to create a landlocked parcel without expressly providing an outlet to a public road." *Id.* (citations omitted). "A single owner must at one time have owned both the landlocked tract to be benefited by the easement (the dominant tenement) and the tract across which the easement would pass (the servient tenement)." *Id.* (citations omitted). This element also requires that "the dominant and servient parcels were owned by one person or entity *immediately prior* to the severance that gives rise to necessity." *Id.* (citations omitted) (emphasis added).

"The element of strict necessity requires that there be no practical access to a public road from the landlocked parcel except across lands that were formerly in

common ownership." *Id.* (citations omitted). "Strict necessity must exist at the time the tracts are severed from the original ownership and at the time the easement is exercised." *Frame*, 231 P.3d at 592. "A developed way of access to the landlocked parcel need not actually exist at the time of severance, and an easement by necessity is distinguished from other implied easements on the simple ground that a developed way need not be in existence at the time of conveyance." *Id.* (citing *Schmid v. McDowell*, 649 P.2d 431, 433 (1982)). "The requisite necessity is the necessity to cross land formerly in common ownership for access to a public road." *Id.* (citations omitted).

Plaintiffs meet both elements of an implied easement by necessity. First, Snavely owned, subject to the parties' respective mortgages, both the Riverside Lot and the Exhibit C Properties "immediately prior to the severance that [gave] rise to necessity." *Frame*, 231 P.3d at 592. In this case, the severance of the Exhibit C Properties from Snavely's larger holdings took place at the time Samuel obtained a sheriff's deed to the parcels on November 20, 2009. *See* James W. Ely, Jr. & Jon W. Bruce, *The Law of Easements & Licenses in Land* § 4:8 (2015) ("Involuntary severance may occur in several ways, such as when part of a common owners land is sold at a mortgage foreclosure sale or other judicial proceeding. If either the parcel sold or the parcel retained is deprived of access by virtue of the sale, an implied easement of necessity may result.") Second, when

Samuel obtained the sheriff's deed, the Riverside Lot remained in Snavely's possession, yet was almost entirely surrounded by the Exhibit C Properties. Thus, there was "no practical access to a public road from the [Riverside Lot] except across lands that were formerly in common ownership." *Frame*, 231 P.3d at 592. This condition persists, meaning that necessity "exist[ed] at the time the tracts [were] severed from the original ownership and at the time the easement is exercised." *Id.*

None of Samuel's arguments negate the above analysis. First, while Samuel is correct that courts view implied easements with a measure of skepticism, he does not, and cannot, argue that they are unrecognized in Montana. *See Yellowstone River, LLC v. Meriwether Land Fund I, LLC*, 264 P.3d 1065, 1078-1079 (Mont. 2011) (because "recognition of implied easements rests upon exceptions to the rule that written instruments speak for themselves[,] . . . such implications are limited to narrow situations," including necessity) (citations omitted).

Second, Samuel is incorrect that Plaintiffs bear the burden of proving lack of contrary intent as a third element to an implied easement by necessity claim. In any event, the Court finds no contrary intent here. Samuel cites *White v. Landerdahl*, 625 P.2d 1145 (Mont. 1981), and *Yellowstone River, LLC* for the proposition that "to establish an easement by necessity, a plaintiff must overcome

any circumstances surrounding the [operative] severance that negate the inference that the mortgagor intended to reserve an easement." (Doc. 20 at 10.) There is an aspect of truth to this statement, in that a court may not uphold the "legal fiction" underlying an implied easement by necessity "where the facts indicate the parties did not intend that an easement be created." *White*, 625 P.2d at 1147 (citations omitted). However, this prohibition against *a court* finding an implied easement in the face of contrary facts does not translate to an affirmative duty on the part of a plaintiff seeking the easement. If anything, the responsibility might fall on Samuel to bring forth any information highlighting contrary intent, and on the Court to evaluate it.

In this case, none of Samuel's allegations regarding contrary intent prohibit the Court from implying an easement over the Exhibit C Properties in Plaintiffs' favor. Samuel contends that Plaintiffs intended to take ownership of the Riverside Lot without legal access because they were on actual notice that the property lacked access[1], they accepted a security interest nonetheless, and they opted not to insure legal access through their title insurance policy. To believe that these

---

1. Samuel suggests that Plaintiffs were on actual notice of the lack of legal access because it was readily apparent on the ground that the Riverside Lot lacked a physical access. However, absence of a road, two-track, or other sign of a travelway cannot serve to put Plaintiffs on notice as Samuel urges. *See Frame*, 231 P.3d at 592 ("an easement by necessity is distinguished from other implied easements on the simple ground that a developed way need not be in existence at the time of conveyance").

allegations represent issues of material fact, the Court must believe another scenario – that Plaintiffs made a bet in 2006 that Snavely would default on both their loan and Samuel's loan, separately severing the Exhibit C Properties and the Riverside Lot and laying the foundation for this implied easement claim. While not outside the realm of possibility, it is equally likely that Plaintiffs took a security interest on the Riverside Lot because it was part of a proposed luxury home subdivision, western Montana was in the throws of a housing boom, and a loan to Snavely seemed like a good investment. (*See* Doc. 19-1 at 5-12.)

Regardless, *Plaintiffs'* intent is not at issue here. The severance that created the necessity occurred when Samuel took ownership of the Exhibit C Properties and Snavely continued to own the Riverside Lot, over four years before Plaintiffs took ownership of the property. Thus, the question is whether the record contains any information indicating that Snavely and Samuel did not intend to create an easement across the Exhibit C Properties for Snavely's benefit. The Court finds no such information in the parties' various submissions.

Third, Samuel's argument that Plaintiffs fail to carry their burden as to the scope of the implied easement is without merit. Samuel cites *Leisz v. Avista Corp.*, 174 P.3d 481 (Mont. 2007), for the proposition that "[a]n essential element a claimant of an implied easement must establish, again by clear and convincing evidence, is its scope." (Doc. 20 at 16.) Apart from the fact that Plaintiffs do not

move for summary judgment on the scope of the implied easement, *Leisz* does not add what Samuel contends is a fourth element to the easement by necessity analysis. In *Leisz*, the Montana Supreme Court's discussion of easement scope was limited to one of the district court's factual findings, and appears in a section of the opinion pertaining to prescriptive easements. 174 P.3d at 487. Prescriptive easement analysis focuses on actual, historical use, making the scope of the easement an important part of the equation. *See Brumit v. Lewis*, 61 P.3d 138, 143 (Mont. 2002). Ultimately, the fact that the scope of the easement Plaintiffs seek remains in question is in no way fatal to their motion for summary judgment.

Based on the foregoing, the Court finds that Plaintiffs are entitled to an implied easement by necessity benefitting the Riverside Lot and encumbering Samuel's Exhibit C Properties, and will grant Plaintiffs' motion for summary judgment accordingly.

## II. Samuel's cross-motion for summary judgment.

To the extent Samuel premises his cross-motion for summary judgment on the exact same arguments he made in response to Plaintiffs' motion for summary judgment, the motion will be denied based on the above. In addition to these arguments, Samuel contends in his brief that because Snavely mortgaged the Exhibit C Properties prior to her acquisition of the Riverside Lot, she did not own the Exhibit C Properties at that time and therefore there was no unity of ownership

at the time of severance.

Samuel bases this argument on *Leonard v. Bailwitz*, 166 A.2d 451, 454-455 (Conn. 1960), in which the Supreme Court of Connecticut ruled that the severance of ownership germane to the implied easement scenario in the case occurred at the time certain parcels were mortgaged. The *Leonard* court noted that, in Connecticut, a "decree of foreclosure . . . merely cut[s] off the [mortgagor's] outstanding right of redemption," meaning that a mortgagee holds title as a result of the mortgage itself and "the extent of the interest or title of the mortgagee is not increased or enlarged by the foreclosure." 166 A.2d at 454. This is because Connecticut "follows the 'title theory' of mortgages, which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property." *Nat'l City Mortg. Co. v. Stoecker*, 888 A.2d 95, 99 (Conn. 2006) (citations omitted). "In a title theory state such as Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt," and "[t]he mortgagor has the right to redeem the legal title previously conveyed by performing the conditions specified in the mortgage document." *Id.* at 99-100 (citations omitted).

On the contrary, Montana is a "lien theory" state, meaning that a mortgagee's interest in mortgaged real property is akin to a lien on that property, and the mortgagor retains title. *See* Mont. Code Ann. § 71-1-202 (2015) ("A

mortgage of real property shall not be deemed a conveyance"); *In re Kurth Ranch*, 110 B.R. 501, 505-506 (Bankr. D. Mont. 1990).

Because of these differences in state real property law, Samuel's reliance on *Leonard* is misplaced and his contention that Snavely severed her interest in the Exhibit C Properties prior to obtaining the Riverside Lot is simply incorrect. Snavely retained title in the Exhibit C Properties until her right of redemption expired post-foreclosure in November 2009, and it is undisputed that she had acquired the Riverside Lot by that time. Thus, *Leonard* does not alter the Court's unity of ownership analysis above, and Samuel's cross-motion for summary judgment will be denied.

## CONCLUSION

Plaintiffs are entitled to an implied easement by necessity benefitting the landlocked Riverside Lot and encumbering Samuel's Exhibit C Properties. Both properties were held in common ownership prior to the severance that gave rise to the necessity – the foreclosure and subsequent expiration of Snavely's one-year statutory redemption period on November 20, 2009. There is strict necessity for the easement in that the Riverside Lot lacks legal access to a public road, except to travel over the Exhibit C Properties. Neither public policy against implied easements, contrary intent on Plaintiffs' part, lack of evidence regarding the easement's scope, nor questions regarding the timing of Snavely's acquisition of

the Riverside Lot compel a different result. The scope of Plaintiffs' implied easement remains at issue in this case.

Accordingly, IT IS ORDERED that Plaintiffs' motion for summary judgment (Doc. 14) is GRANTED and Defendant Samuel's motion for summary judgment (Doc. 21) is DENIED.

DATED this 15th day of December, 2015.

Dana L. Christensen, Chief Judge
United States District Court